Good morning, may it please the Court. My name is Thomas Fell, and I represent the appellant here. I would like to reserve three minutes. Am I correct that you need the transfer to be void ab initio? That is the primary argument, Your Honor. That is the position that— I think if it's not void ab initio, you're time-barred. Is that right? That was what the ruling was by the bankruptcy court, Your Honor. Is there any way around it? Yes, Your Honor, there is. Assuming under that scenario that 549 is the applicable statute for the avoidance of the post-petition transfer, and thus the two-year statute of limitations of 549 is applicable, and thus the time-barred argument, we still nevertheless had put forward our positions regarding why there are certain circumstances where tolling would be appropriate for that two-year statute of limitations. As set forth in the pleadings, Your Honor, there are specific times when tolling is appropriate, such as when did the injury become aware — when did the party become aware of the injury, and when did the party become aware of who caused that injury? That was an issue that was argued at the lower court. Judge Riegel in the bankruptcy court determined that, yes, equitable tolling could be appropriate, however, under the facts and circumstances as presented to her in the motion for summary judgment, she did not believe it was appropriate. Your Honor, I submit to you that given the burden on a summary judgment motion whereby the court must view favorably on the facts to the nonmoving party, that summary judgment was not appropriate given that potential genuine issue of material fact regarding whether tolling would be appropriate. Was there any evidence, though, in the record that Hunt Orman did anything once it learned about the transfer of the lease and option? No, Your Honor. Let me summarize for you what the evidence was with respect to the knowledge. What the parties — and there's no dispute here between the parties as to the underlying timeline of facts where this transfer occurred back in March of 2000, when the plan was The first indication to Hunt Orman that this transfer occurred was by a verbal communication in December of — I'm sorry. Those fees and those transfers were 2001, not 2000. And the ultimate verbal notification to Hunt Orman that there had been a bankruptcy, not a transfer, but a bankruptcy. They were told about that in December, after the plan had already been confirmed, after a time period in which Hunt Orman would have been able to do anything. December of what year? I'm sorry, Your Honor. Let me make sure. I said 2001. Okay. So that you knew in 2001 of the bankruptcy filing. Knew, had been told verbally that there had been a bankruptcy filing previously. That's all that occurred. And the discovery, the initial discovery that there had been a transfer was in 2004? In 2004, correct, Your Honor, during a deposition in a litigation that was pending here in the State of California, a witness testified that the lease and option had been transferred by the debtor, had been represented sometime in October of 2001 post-confirmation of the debtor's plan. That's significant. Why doesn't your tolling end in December 2001? Oh, in 2001. I mean, the dependent, Chautakis Distributing, owes your client money. Correct. And your client knows they've gone bankrupt. Correct. Everyone knows, geez, my debtor owes me money, and they're in bankruptcy. I better check and make sure I get my money out. Because in December. In December of 2001, once the plan had already been confirmed and no formal notice having been given to a creditor, that creditor doesn't, isn't affected by the discharge of a Chapter 11 reorganization. If it had never had noticed an opportunity to participate. Let me give you a hypothetical. Let me give you a hypothetical. Suppose that the bankrupt is a real crook, and he purposely sneaks his only real asset of value out of the bankruptcy, declares bankruptcy, and purposely does not list creditors who might make a claim on his schedule. A creditor, nevertheless, finds out that he's in bankruptcy, and he actually does go over to bankruptcy court, check the papers that were filed, and determines that he was not listed on the schedule of creditors. Can he just waltz along, not worrying about it, because he knows that it won't affect him, or does he have to take action? No, Your Honor. The answer is the first. Let's use the simple hypothetical, the Chapter 7, the crook. This happens all the time. You're absolutely right. Happens all the time. The Chapter 7 crook. He goes into bankruptcy. 90 days, 120 days later, he's got his discharge. Somewhere along the line, shortly around that time period, a creditor hears of a bankruptcy. The law is clear that that creditor, because he was not scheduled and did not receive notice of the bar date from the bankruptcy court, under 523, that creditor is not discharged. Unless it's a no-asset case. Tell me the citation to use for that. I'm sorry, 523. 11 U.S.C. 523. That's certain claims that are not discharged. And one of those is, in fact, when a creditor is not noticed formally of a bankruptcy. That's one of the underlying principles of bankruptcy. In order for an honest debtor to get their discharge, they have to notice everybody. Everyone has to have an opportunity to participate, both two ways. One, by the filing of its proof of claim before the bar date. And two. Does that apply? Does that apply even in the face of the statute of limitations? Absolutely, Your Honor. Absolutely. And the creditor must have the opportunity to participate by filing a claim and in the confirmation process. You all have raised a good point with me, such as in December. So what is the statute of limitation? When does it start in your world? Your Honor, if we were to go with my first assertion here, which is that under 363, it is a void transfer, it's no different than under 362 of the Code, the automatic stay violation, which the Ninth Circuit, as well as most other courts, have already said is a void, and thus there is no statute of limitations issue for avoiding a transfer in violation of 362. My premise is it's no different. 363 is the same. It's another related Code section relating to an unauthorized transfer. There should be no statute of limitations, and the transaction should be void. If you go down the other path saying, well, no, it's voidable, and thus 549 in the statute of limitations, then we believe it's appropriate that tolling that statute until there's knowledge. But knowledge of what? Because you knew of two things by 2004. You knew that there had been a bankruptcy proceeding and you knew that there had been a transfer of the property. Yes, Your Honor. And let me – what would you do in 2001, December 2001? You have knowledge of a bankruptcy. Let's talk about what you could learn with that knowledge. You're in California. You're told there was a bankruptcy in the State of Nevada. What can we do? We can look at the filings that were with the court, all the debtors' pleadings that were filed. So what was filed? The schedules and statements, various motions, ultimately a disclosure statement and plan. What did the disclosure statement and plan disclose in this case? Nothing with regards to an option to purchase this property and nothing with respect to a transfer of the option and the underlying lease. That was not disclosed to the court. So how is a creditor who goes and looks at the documents on file in the court to discover that? It's not possible. It's not there. In fact, quite the opposite was true. Okay. So now in 2004, that same diligent creditor finds out, oh, boy, here comes more property that's been transferred away that wasn't listed previously. On notice that there was avoidable transfer? Okay. So the creditor assumes because the lease was part of the schedules, it's all in the disclosure statement. There's nothing about a transfer. Therefore, presumably, the asset revested in the debtor upon confirmation of the plan. The debtor has it. Chautauqua still has its lease. So three years go by, and all of a sudden, the creditor is told, oh, you know, there was a transfer of that lease. But it occurred in October of 2001, which, by the way, was after the confirmation date. That statement was wrong, but that's what was stated to the creditor. So if the creditor says, okay, a transfer occurred post-confirmation, makes sense because it didn't occur through the plan, so it had to occur post-confirmation, then bankruptcy isn't even relevant, Your Honor. Now you bring in your fraudulent transfer statutes under State law, completely separate issue. If the creditor is sitting there and has that knowledge, then it can pursue those remedies. Those remedies are different and have a different statute of limitations. There was no reason why a creditor in 2004 being told of a transfer that occurred purportedly post-confirmation. No reason why that creditor could take any other action at that point. And, again, what could the creditor have learned in 2004? Again, nothing would have been in the bankruptcy docket which would have alerted to any wrongdoing of the bank. And in the original filing of the bankruptcy, did it say that one of the assets of the estate was this lease with an option to buy? The lease, Your Honor, is scheduled on Schedule G in any bankruptcy, more or less as an executory contract. The lease, correctly, by a debtor was brought forward in front of the Court by motion to assume, because under the Bankruptcy Code, you have a certain short time period to assume or reject a real property lease. The debtor filed a motion to assume the lease. That motion was filed. Hadn't even been heard when this transfer occurred. And after the transfer occurred, the motion's heard by the Bankruptcy Court. And, again, the Bankruptcy Court is not told that the transfer occurred. And Judge Riegel approves the assumption of the lease. So if you look in the Bankruptcy Court's file, you see a real property lease that was brought by motion and assumed by the debtor. It rode through the estate. It revested in the estate. The lease was assumed and the option revested upon confirmation. That's all one can glean from reviewing the Bankruptcy Court's file back in 2001 and any time forward until the motion to reopen the case was brought. And that was in 2007? Correct. What in 2007 made you find out something was amiss? What happened was a judgment was entered in the State of California against the debtor in favor of my client. My client came to the State of Nevada where the debtor was conducting its business operations and domesticated under regular state law procedures. Upon the domestication of that judgment, the debtor came forward, reopened the case and attempted to hold my client in contempt for violation of the discharge injunction. So the original claim that your client had in 2001 was it wasn't a large amount of money? It was a small amount of money with a contingent liability. It all relates to the same contractual relationship. It just hadn't been liquidated yet at that point in time. It was liquidated subsequently in the California arbitration at the much larger amount. That's correct. It was a big amount, wasn't it? It was, Your Honor. It was. And the principal amount was approximately $985,000 at the time it was arbitrated in California. So at the point in time when we are now have the bankruptcy case reopened in the Nevada Bankruptcy Court and we commenced discovery, we asked about this asset. And it was upon, it was during that discovery that we learned that the transfer had occurred before the plan had been confirmed. It had occurred without the bankruptcy court or any creditor in the case ever having been noticed. And it was a result of that, bringing that to the Court's attention, that Judge Riegel requested the office of the United States trustee to investigate it. And we talk about that in our briefs and it is part of the record. Unfortunately, while the office of the United States trustee found the problems with this transfer, he also concluded that the court didn't have jurisdiction to now appoint a trustee off the panel to come in and do anything further. As a result, that's when my client brought the action immediately without delay in an attempt to resolve the transfer. I see my time is very short and I wanted to reserve a couple of minutes. Why don't you do that? Thank you. You're welcome to do that. And we will next hear from Mr. Coffin. Thank you. May it please the Court, Terry Coffin on behalf of Nevada Lease Option, which I refer to as NVLO and its members. What I think needs to be emphasized here is the status of Hunt Ortman here. They're not a plumber. They're not a contractor. They're not a stockbroker. They're a creditor, aren't they? They're a creditor, but they're attorneys who represented this debtor. They're a creditor who was basically ripped off by a fraudulent transfer, it looks like. Your Honor, when you say a fraudulent transfer, my clients had no knowledge of the bankruptcy at the time they entered into this transaction. And at the time of the 2001, they were credited to the tune of $4,000. And that's why we believe when Mr. Blasco learned of the bankruptcy, he took no action because he knew he had a $4,000 claim. He was well aware of the option and the lease because he drafted a memorandum of such and recorded it in Clark County. Now, if Mr. Blasco, on behalf of Hunt Ortman, was aware in 2001 or believed that that asset had value, he would have taken action immediately at that time. But my clients were not aware of the bankruptcy's pending status at the time we loaned the money and received the option as consideration for the loan. So I appreciate your comment to the extent they're ripped off, but my clients had no knowledge of anyone attempting to be defrauded in any way. Nonetheless, if the transfer were void and everything had been done in time, your client's state of mind wouldn't prevent the action from going forward, would it? I would agree, Your Honor. If the court takes the position that 363 renders the transaction void, my client's state of mind does not matter. However, if the court is going to take the position that 363 is void, the question arises just as Judge Regal discussed in her opinion, then what is the purpose of 549? Well, let's assume that it's only voidable and that we're looking at the statute of limitations. If this action had been brought, you know, two weeks after the discharge, if they had figured it out, would you still – would your client's state of mind matter then either? At that – if it were brought at that time, Your Honor, I think the analysis would have been entirely different. It would have been what value did my clients provide. If it's simply voidable, the court would have had the opportunity to analyze the value that my client provided and its value to the estate at that time. And at that time, it's – Wouldn't that still be the analysis if we were to conclude that it was timely because of tolling? I think that's part of the court's analysis, but the bigger factor in that analysis has to be the knowledge of what Hunt Ortman – the knowledge that they had and what actions they took because – Well, no, I understand your main – the main thrust of this is that it's untimely. I guess if it was timely, what is the result of that in terms of the analysis that the court should go through? The analysis that the court should look at is at the time of the transfer, not with the rose-tinted glasses afforded by hindsight as counsel would set forth. What counsel has argued in their papers is that there is some $4.7 million benefit that we received at the time of this transfer. However, if you note, that number first appears in the reply brief. It is not attributed to any testimony or evidence below. And, candidly, I don't know where that number came from, and certainly would dispute as the testimony that was provided in the record before this court that the value of the option at the time of the transfer was nominal, if any. The value was in the lease, perhaps, but the value of this property at the option strike price, it was simply underwater. We would never reach that. I guess I'm furrowing my brow because I don't understand how we would ever reach that argument here. If we were to, and I know you don't agree with this, but if we were to hold that for one reason or another this was a timely action, wouldn't that just be descended back to the district court or the bankruptcy court for further processing? We wouldn't be deciding the value here, would we? Correct. You're correct, Your Honor, and I think I understand what you're saying. If you were to decide that the transaction was merely voidable and that there was either insufficient evidence or that it needed to go back to the court for some other factual determination, then the analysis as to regarding the value of the property transferred would become relevant in looking at the 549 issue. But respectfully, that's perhaps, as you're saying, not before the court today. And so I would ask the court to concentrate on the issues that really go to the knowledge of Hunt Dortman here, and that is the December 1st direct knowledge of the transfer directly to Mr. Blasco, the 2004 deposition testimony which, as we pointed out, Mr. Blasco originally denied knowing and made extensive revisions to his deposition testimony, but now admits and he still took no action. And the court's, the legion of cases that we cited is that a creditor, however righteous their claim may be, may not sit back on their rights and allow the passage of time to prejudice, I think the case is cited, prejudice against faded memories and dismissive evidence at the time. And that's what's really driving this here. When Hunt Dortman gets a judgment in some $985,000, as Judge Riegel pointed out, we have to remember that that is, that judgment is based upon an indemnity claim for their own malpractice. And as Judge Riegel questioned the cleanliness of their hands in coming to the court, I can't challenge that judgment today, but that's part of the factor, I think part of the issues that this Court can consider in determining, while counsel does a good job of trying to argue that the magnitude of the harm here, which I simply believe is unsupported by the record, it's what harm, where does that harm come from, I think is also an equally apt analysis. As counsel concedes, the lease and the option were disclosed to all creditors. Counsel also could mention that this action, his adversary action, was noticed to all creditors, none of whom declined to participate in this action. So this guardian and trustee, guardian angel of all creditors' claims is belied by the fact that no other creditor is standing before you seeking the same remedy, and by the settlement agreement that he subsequently entered into that does not seek to benefit any other creditors, but seeks to have a recovery for Hunt Dortman well in excess of the amount of even their judgment. So, Your Honor, I'd ask that you take these facts in consideration. Counsel, let me ask you a question. What in November of 2004 should Hunt Dortman have done to determine whether it had a righteous claim? Well, it should have done what any prudent attorney, I think, would have done, having a potentially large claim. Find out what, number one, did that transfer harm me? Was there an asset there of any value that could have harmed me? Or if there's not, then really I have no remedy. How do they go about doing that? Search real property records. As an attorney of 27 years, a real estate attorney of 27 years, Mr. Blasco was well aware. In fact, there's some evidence in the record that he conducted a Westlaw search. Opposing counsel says, well, we knew there was a transfer, but we were entitled to assume that it was post-discharge because that would have been the legal thing to do. What would have given them an inkling anywhere along the way that this was an impermissible pre-discharge transfer? Well, what would have given them an inkling is a cursory investigation. There was no attempt to conceal this transfer from anyone. In fact, my clients recorded a consent to assignment that was executed by the property owner, Mr. Shatakis, prior to his death. So even a cursory review would have indicated that there had been a transfer. Mr. Blasco uniquely was aware of the prior valuations of this property. And as a prudent creditor, indeed, as a prudent attorney. Title search would have turned it up? Title search would have turned up the consent and indicated the transfer had taken place. So they wouldn't have found out by looking in the bankruptcy court file, but they would have found out if they'd done a title search. Correct. And so the bankruptcy file does not – and I cannot condone any actions of Shatakis in not seeking approval for this. Now, of course, nobody would do a title search if they had a $4,000 claim. That's exactly the point, Your Honor. The reason they did no action is because they had a $4,000 claim. So are they entitled to just sit silently and not worry about it? Because since they weren't given notice, they won't be affected? No. And I think the case law that we cited, that a creditor may not simply stand on its rights. They need to take action to protect those rights once they have knowledge of a potential violation of those rights. And here we have knowledgeable counsel on their own claim. They took no action. And it's on those undisputed facts that Judge Riegel granted our motion for summary judgment. So the case really does come down to whether a creditor can sit and do nothing when they haven't been given proper notice? I believe it does, Your Honor. And that's where – on the undisputed facts that Judge Riegel had before her, that is, the testimony that he was aware of the bankruptcy in 2001 and aware of the transfer as of at least 2004. Those undisputed facts, even as this Court reviews as de novo, clearly indicate that this claim is time-barred. They sat on their rights. They took no action. And on that basis, they should not be allowed to prevail or be heard here now when the property has appreciated in value or perhaps ironically depreciated in value and seek to recover this asset now. Absent further questions, I have nothing. I think there are. Thank you, Mr. Denny. Thank you very kindly. You have some rebuttal time remaining. Thank you. I really want to address those last two points and the questions that were raised regarding what could have been done and what should have been found. One, this question has not been answered. And I don't believe it's answerable. And that is, what should Hunt Orton have done in December 2001? What could it have done to determine that its rights had been affected? He was informed that there was a bankruptcy. I've already described for Your Honors what you would have found regarding the bankruptcy and what it would have told you. That's it. There's nothing more that the creditor could have done. Let's talk about that. And with the lease only, I suppose you would have to say, what is your incentive to do a title search at that time? It's more than that also, Your Honor. And this goes to the follow-up question and the follow-up point. When Your Honor said, would you find it by a title search, there is a flaw in what is being told to this Court regarding what would have been found. Look at the words very carefully in the pleadings and in the record and what counsel stated. A document that was a consent was recorded. A consent. A consent by the owner of the real property consenting to a transfer of a lease. There is no assignment of lease actually recorded against the property. There is nothing that one would find that says this lease, this option has been assigned to so-and-so. Rather, you have a landlord saying, I consent to an assignment. So I ask you, if you found something that said there's a consent to do it, then what can you do? There's nothing more in the record, in the title report, that tells you there's been a transfer or when that transfer occurred. That's the key. What would tell you when the transfer occurred that would give rise to whether you have a State law fraudulent transfer cause of action, because it was post-bankruptcy, or you needed to get back over to bankruptcy court somehow years later because it occurred years ago without knowledge to anybody? Thank you, counsel. Thank you very much. We appreciate the helpful arguments of counsel. The case just argued is submitted.
judges: Carney, Kleinfeld, Graber